UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT J. TLUSTY,

    Plaintiff,

v.                               Case No.  5:23-cv-319-MCR-MJF

D. SWAIN, *et al*,

    Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Robert Tlusty, a prisoner proceeding *pro se* and *in forma pauperis*, has filed a third amended civil rights complaint against federal prison officials under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Tlusty alleges excessive-force and failure-to-protect claims under the Eighth Amendment. Doc. 22. The undersigned recommends that this case be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), because Tlusty fails to state a claim on which relief can be granted.

I. ALLEGATIONS OF TLUSTY'S COMPLAINT

Tlusty is a prisoner of the Wisconsin Department of Corrections currently housed at the Columbia Correctional Institution in Portage, Wisconsin. Doc. 22 at 2. Tlusty's claims arise from his incarceration in Federal Correctional Institution–Marianna.[1] Tlusty's third amended complaint names five Defendants: Officer D. Swaim, Officer K. Davis, "Unknown Defendants," Officer S. Vann, and Lieutenant T. Sherman. *Id.* at 2-3, 18 in ECF. All Defendants are prison officials at FCI-Marianna, and all are sued in their individual capacities. *Id.*

Tlusty claims that the Defendants violated Tlusty's rights under the Eighth and Fourteenth Amendments. Specifically, Tlusty alleges that Swaim used excessive force by pushing and striking Tlusty after Tlusty refused and physically prevented Swaim from placing Tlusty in a particular cell in the Special Housing Unit. Doc. 22 ¶¶ 6-14. Later, Vann and Sherman allegedly failed to protect Tlusty by placing Tlusty in a cell

---

[1] The undersigned takes judicial notice that Tlusty was in the custody of the Bureau of Prisons pursuant to the judgment and sentence of the United States District Court for the Western District of Wisconsin, after Tlusty was convicted of receipt of child pornography. *See United States of America v. Robert Tlusty*, No. 3:14-cr-64-jdp; *see also* Doc. 22 at 15 in ECF (identifying federal criminal case).

with a "known sexual predator" who later "sexually harassed" Tlusty by "rubbing on the Plaintiff's person, commenting on how soft [Tlusty's] skin was, while continuing to request sexual favors." *Id.* ¶¶ 18-21. Tlusty alleges that the following day, Davis used excessive force on Tlusty when Davis sprayed a chemical agent into Tlusty's cell. *Id.* ¶¶ 27-32. Tlusty alleges that Swaim and the Unknown Defendants "colluded" with Davis and "orchestrated" Davis's unjustified use of force. *Id.* at 19 in ECF. As relief, Tlusty seeks millions of dollars in compensatory and punitive damages. *Id.* at 22-23 in ECF.

## II.   SCREENING UNDER 28 U.S.C. §§ 1915(e)(2) AND 1915A

Because Tlusty is a prisoner and is proceeding *in forma pauperis*, this court is required to review the third amended complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (comparable screening provision of *in forma pauperis* statute).

To prevent dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," that is, "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. The mere possibility that the defendant acted unlawfully is insufficient. *Iqbal*, 556 U.S. at 678.

### III.   REVIEW OF TLUSTY'S COMPLAINT

#### A.   <u>Tlusty's Eighth and Fourteenth Amendment Claims Must Be Dismissed Because a *Bivens* Remedy Is Not Available</u>

The Supreme Court has recognized an implied cause of action under the Constitution for damages in only three specific contexts: (1) an unreasonable-search-and-seizure claim under the Fourth Amendment, *Bivens*, 403 U.S. at 392; (2) a gender-discrimination claim under the Due

Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); and (3) a medical-deliberate-indifference claim under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 18 (1980). The expansion of *Bivens* beyond these three specific contexts is "disfavored." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). After the original *Bivens* trilogy, the Supreme Court consistently has declined to imply new damages remedies. *See Egbert v. Boule*, 596 U.S. 482, 486 (2022) (collecting cases and declining, again, to imply a cause of action for constitutional violations arising in other contexts—in that case, a Fourth-Amendment excessive-force claim and a First-Amendment retaliation claim).

When determining whether a plaintiff may bring a claim under *Bivens*, a court first determines whether the claim presents "a new *Bivens* context." *Ziglar*, 582 U.S. at 139. A case presents a new *Bivens* context if it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 582 U.S. at 139; *Egbert*, 596 U.S. at 492.

"A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy

was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020); *Ziglar*, 582 U.S. at 139.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139-40.

If the case presents a new *Bivens* context, then "a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (internal quotation marks and citations omitted).

Although courts traditionally have described the analysis as involving two steps, "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. That is because some of the considerations in step one—for example, the risk of disrupting other branches and the presence of special factors that prior

*Bivens* cases did not consider—are similar to and overlap with the second step. *See Egbert*, 596 U.S. at 492; *see also e.g., Ziglar*, 582 U.S. at 139-40.

In short, if "there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (quoting *Ziglar*, 582 U.S. at 136), a court cannot provide a *Bivens* cause of action. *Egbert*, 596 U.S. at 492.

1. ***Tlusty's Excessive-Force and Failure-to-Protect Claims Present New Bivens Contexts***

"While the Supreme Court previously recognized a *Bivens* action under the Eighth Amendment in the context of a prison official's deliberate indifference to a prisoner's serious medical needs, an excessive force claim under the Eighth Amendment raises a new context, as the alleged official actions in each case differ significantly." *Farrington v. Diah*, No. 22-13281, 2023 WL 7220003, at *1 (11th Cir. Nov. 2, 2023) (citing *Ziglar*, 582 U.S. at 139-40). The same is true of a failure-to-protect claim.

Not only do the alleged official actions differ, but Tlusty's claims also would interfere with a vastly different part of prison operations—

security/uses of force and housing assignments, instead of medical care—thereby threatening to intrude into the functioning of federal prisons in ways *Carlson* did not contemplate. *See Sargeant v. Barfield*, 87 F.4th 358, 366-67 (7th Cir. 2023) (Eighth-Amendment failure-to-protect claim presented new *Bivens* context);[2] *Bulger v. Hurwitz*, 62 F.4th 127, 138-39 (4th Cir. 2023) (Eighth-Amendment failure-to-protect and failure-to-

---

[2] In *Sargeant*, the Seventh Circuit rejected the prisoner's argument that in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court impliedly established a new context—or at least stretched the bounds of *Carlson*'s context to include Eighth-Amendment failure-to-protect claims. *Sargeant*, 87 F.4th at 365 ("The [Supreme] Court never held—just assumed—that a *Bivens* remedy was available to the plaintiff. . . . A silent assumption in an opinion cannot generate binding precedent."); *see also id.* at 365 ("*Farmer* never said anything about the scope of the *Bivens* doctrine[;] there is no *Bivens* holding in *Farmer*."); *see also Bulger v. Hurwitz*, 62 F.4th 127, 139 (4th Cir. 2023) (*Farmer* did not extend *Bivens* to the failure-to-protect context); *Chambers v. Herrera*, 78 F.4th 1100, 1105 n.2 (9th Cir. 2023) (same). The court in *Sargeant* also observed:

> The Supreme Court's three most recent opinions in the *Bivens* space align with our conclusion. Each recognized only three times that a constitutional damages remedy has been implied against federal officers: in *Bivens*, in *Davis*, and in *Carlson*. *Egbert*, 596 U.S. at 490-91, 142 S. Ct. 1793; *Hernandez*, 140 S. Ct. at 741; *Abbasi*, 582 U.S. at 131, 137 S. Ct. 1843. Not once has the Supreme Court mentioned *Farmer* alongside those cases, and we think it would have if *Farmer* created a new context or clarified the scope of an existing one.

*Sargeant*, 87 F.4th at 365.

intervene claims presented new *Bivens* contexts); *Chambers v. Herrera*, 78 F.4th 1100, 1105-08 (9th Cir. 2023) (Eighth-Amendment excessive-force and failure-to-protect claims presented new *Bivens* contexts); *Looper v. Jones*, No. 22-40579, 2023 WL 5814910, at *2 (5th Cir. Sept. 8, 2023) (unpublished) (Eighth-Amendment failure-to-protect and failure-to-intervene claims presented new *Bivens* contexts); *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) (unpublished) (Eighth-Amendment failure-to-protect and verbal-harassment claims presented new *Bivens* contexts).

### 2. *Special Factors Weigh Against Implying a Remedy Under Bivens*

Additional factors make this context new and counsel against extending *Bivens* to Tlusty's claims. One factor is that after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. Although the PLRA did not preclude *Bivens* actions, it did not provide for damages remedies in new contexts either. Because of this, the Court in *Ziglar* observed that "[i]t could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Ziglar*,

582 U.S. at 148-49; *Farrington*, at \*2 ("Congress specifically considered the issue of prisoner abuse in the passage of the Prison Litigation Reform Act, ultimately providing an alternative remedy pathway that did not provide for standalone damages against federal employees."); *Sargeant*, 87 F.4th at 368 (recognizing same); *Looper*, 2023 WL 5814910, at \*2 (same); *Hower*, 2022 WL 16578864, at \*4 (same); *Chambers*, 78 F.4th at 1106, 1107 ("[A]ny decision by Congress or the Executive not to create an express Eighth Amendment failure to protect cause of action for prisoners, where it has legislated, suggests that they have decided against creating such an action.").

Another factor counseling against extending *Bivens* to the new contexts at issue here is the existence of an alternative remedial structure provided by the Executive Branch, namely, the Bureau of Prisons' Administrative Remedy Program. *See Egbert*, 596 U.S. at 493 ("[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure.");[3] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74

---

[3] The Court said in *Egbert*:

(2001) (declining to recognize a *Bivens* action for an Eighth-Amendment claim in part because prisoners "have full access to remedial mechanisms established by the [Bureau of Prisons]," including "grievances filed through [its] Administrative Remedy Program."); *Farrington*, at *2 (the BOP's Administrative Remedy Program weighed against extending *Bivens* to excessive-force claim); *Sargeant*, 87 F.4th at 368 (same as to extending *Bivens* remedy to Eighth-Amendment failure-to-protect claims); *Chambers*, 78 F.4th at 1106-08 (same as to Eighth-Amendment failure-to-protect and excessive-force claims); *Bulger*, 62 F.4th at 140-41 (same as to failure-to-protect and failure-to-intervene claims); *Hower*, 2022 WL 16578864, at *3 (same as to failure-to-protect and verbal-harassment claims).

---

> [T]he relevant question is not whether a *Bivens* action would disrupt a remedial scheme, or whether the court should provide for a wrong that would otherwise go unredressed. Nor does it matter that existing remedies do not provide complete relief. Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.

*Egbert*, 596 U.S. at 493 (alterations adopted) (internal quotation marks and citations omitted).

The PLRA and the BOP's grievance program satisfy the low bar set by *Egbert* for declining to extend *Bivens* to the new contexts Tlusty's claims present. These reasons constitute "any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 496 (internal quotation marks omitted); *Sargeant*. 87 F.4th at 368 (the PLRA and the BOP's administrative grievance procedure "suggest[ ] that Congress is better positioned to assess the need for a remedy or that Congress might not desire a new remedy.").

Because *Bivens* does not extend to include excessive-force and failure-to-protect claims arising under the Eighth Amendment, this *Bivens* action must be dismissed.[4]

---

[4] The undersigned has not overlooked *Caldwell v. Warden*, FCI Talladega, 748 F.3d 1090 (11th Cir. 2014). In *Caldwell*, a federal prisoner brought a *Bivens* action against federal prison officials asserting a failure-to-protect claim under the Eighth Amendment. The Eleventh Circuit addressed the merits, reversing the district court's grant of summary judgment based on qualified immunity. The issue of whether a *Bivens* action for that type of claim existed was not raised or discussed in the district court, nor was the issue raised on appeal. More significantly, *Caldwell* predated the Supreme Court's later guidance in *Ziglar* and *Egbert*. Thus, *Caldwell* is not binding precedent on the issue of whether *Bivens* creates a cause of action for an Eighth-Amendment failure-to-protect claim.

B.   **Tlusty's Claims Asserted Under the Universal Declaration of Human Rights and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment Must Be Dismissed**

Tlusty's Statement of Claims alleges that the Defendants' conduct also violated the Universal Declaration of Human Rights (the "UDHR") and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (the "CAT Treaty"). Doc. 22 at 19-22 in ECF.

"The rights secured by the UNDHR are not federal rights." *Moore v. McLaughlin*, 569 F. App'x 656, 660 (11th Cir. 2014)) (citing *Sosa v. Alvarez–Machain*, 542 U.S. 692, 734 (2004)). Similarly, the CAT Treaty is "not self-executing, or subject to relevant legislation, and, therefore, do[es] not confer upon aliens a private right of action to allege a violation of their terms. *United States v. Casaran-Rivas*, 311 F. App'x 269, 272 (11th Cir. 2009) (citations omitted).

Thus, to the extent Tlusty's conclusory references to the UNDHR and the CAT Treaty were intended as standalone federal claims, they must be dismissed for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. This action be **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), for failure to state a claim upon which relief can be granted.

2. The clerk of court be directed to enter judgment accordingly and close this case file.

At Panama City, Florida, this <u>6th</u> day of May, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only.**</u> **A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order**

**based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**